# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN STAGLIANO, *et al.* | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 20-1760 |
| | : | |
| THE O.N. EQUITY SALES COMPANY | : | |

# MEMORANDUM

**KEARNEY, J**  June 15, 2020

The Supreme Court last term again confirmed arbitration requires consent by contracting parties. When the parties have a written agreement to arbitrate certain disputes but do not include others, we cannot add claims the parties did not agree to arbitrate. If the parties did not unequivocally agree to have the arbitrators decide whether the claims are arbitrable then we must do so. We today study four investors' petition to compel arbitration of their insurance claims against a brokerage house which had a relationship with a life insurance agent who sold whole and term life insurance policies which allegedly caused losses for the four investors. The brokerage house agrees the securities claims of three investors who signed customer agreements belong in arbitration. The investors hope to arbitrate their insurance claims in the same forum as their securities claims provided by the Financial Industry Dispute Resolution Authority. After finding we may decide the arbitrability of these issues, the parties' intent as to the scope of arbitrable claims is evident from their agreement and, as they agreed to proceed on a summary judgment standard, we find no genuine issue of material fact precluding our finding one of the four investors cannot compel the brokerage house to arbitrate any of her claims and the other three investors cannot show intent to arbitrate insurance policy claims not included in their agreements. We deny the investors' petition to compel arbitration and, as the parties declined to proceed further before us, we close this case.

I.      **Undisputed facts**[1]

Investors Susan Stagliano, Blythe Stagliano, Joseph Cordone, and Cynthia Currie hired Richard M. Wesselt to recommend investment strategies for their retirement assets.[2] Mr. Wesselt held a license as an insurance agent. He also operated a financial planning life insurance company, Wesselt Capital Group.[3]   Mr. Wesselt registered with The O.N. Equity Sales Company (ONESCO) from March 2014 to September 2017.[4] ONESCO approved Wesselt Capital Group as one of Mr. Wesselt's outside business activities.[5]

Susan Stagliano, Blythe Stagliano, and Joseph Cordone signed account opening documents and became ONESCO customers.  Cynthia Currie did not sign an account opening statement with ONESCO.[6] The ONESCO account documents do not mandate arbitration.[7]  But as a brokerage house, ONESCO is regulated by the Financial Industry Dispute Resolution Authority ("FINRA"), a government-authorized regulator of United States broker-dealers. FINRA requires investors, securities firms, and individual brokers arbitrate their disputes consistent with their agreements.[8]

Mr. Wesselt sold the Investors whole and term life insurance policies.  Mr. Wesselt recommended the sale of securities, such as variable annuities, mutual funds and retirement assets, to fund the purchase of whole life policies and other annuities.[9] Mr. Wesselt advised the Investors to withdraw funds from their insurance policies to pay for various expenses and investments.[10] The Investors did not pay ONESCO nor did ONESCO ask them to.  ONESCO did not pay Mr. Wesselt for selling the whole life insurance policies, term life insurance policies, or fixed annuities.[11] ONESCO is not in the business of selling life insurance, is not licensed to sell insurance, and does not appoint life insurance agents.[12]

The Investors' portfolios declined dramatically in value.[13] The Investors argue ONESCO's failure to supervise Mr. Wesselt caused losses in their retirement savings.[14] Investors want to hold

ONESCO liable for Mr. Wesselt's advice relating to securities and for the insurance policies he sold them.[15]

### *FINRA claims*

The Investors began seeking recovery by filing a Statement of Claim against ONESCO with FINRA Dispute Resolution on December 11, 2019.[16]   On February 13, 2020, ONESCO responded by asking FINRA's Director to deny FINRA arbitration over the Investors' insurance product claims and for an administrative stay.[17] ONESCO sought the dismissal of claims relating to insurance products and all of Ms. Currie's claims.[18]

ONESCO conceded FINRA enjoyed jurisdiction over the securities claims filed by Susan Stagliano, Blythe Stagliano, and Joseph Cordone.[19]  ONESCO filed a Uniform Submission Agreement providing: "The undersigned parties [ONESCO] hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure."[20]  While conceding jurisdiction over the securities claims, ONESCO wrote to FINRA consistent with its motion to deny and dismiss representing "[n]othing contained within this Answer or in the [Agreement], should be deemed a waiver of ONESCO's request the Director dismiss certain claims for lack of jurisdiction."[21]

### *FINRA declines to arbitrate Ms. Currie's and the insurance claims*

FINRA's Director found the insurance claims could not be resolved in a FINRA arbitration.[22] The Director of FINRA Dispute Resolution also granted ONESCO's Motion as it related to Investor Currie.[23] The Director allowed the securities claims of the remaining Investors to proceed consistent with ONESCO's agreement.[24]

**II.      Analysis**

The Investors then sued here to compel ONESCO to arbitrate their insurance claims and Ms. Currie's claims under the Federal Arbitration Act before FINRA Dispute Resolution.[25] ONESCO argues the insurance claims are outside the scope of their agreement. During oral argument before us, the Investors clarified Ms. Currie does not have an account with ONESCO.[26] The parties agreed they needed no additional discovery and the question of arbitrability is ripe to decide as a matter of law.[27] Our analysis involves two issues: does the Court decide arbitrability; and if so, are the insurance related claims subject to arbitration under the FINRA Rules?

Congress' primary goal through the Federal Arbitration Act is to "overcome judicial resistance to arbitration."[28] Under the Act: "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court…for an order directing that such arbitration proceed in the manner provided for in such agreement."[29] Congress requires we "enforce arbitration agreements according to their terms."[30] We order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."[31]

Our Court of Appeals instructed in *MacDonald v. CashCall, Inc.*, "the common-law rules of contract interpretation apply to arbitration agreements."[32] The Federal Arbitration Act reflects a national policy favoring arbitration and places arbitration agreements equal to all other contracts.[33]

> **A.     Absent a clear agreement to have FINRA Dispute Resolution decide the issue, we enjoy jurisdiction to decide the arbitrability of the Investors' claims.**

The Investors argue the law of arbitrability is an issue for judicial determination. ONESCO responds the Investors implicitly agreed to bring their claims to the arbitrators instead of the Court. After study, we disagree with ONESCO and will decide the question of arbitrability.

The gateway question of whether parties are bound by an agreement to arbitrate is "typically resolved in court."[34] In *Opalinski v. Robert Half Int'l Inc.*, our Court of Appeals held a question of arbitrability is a question for the Court "unless the parties unmistakably provide otherwise."[35] The party challenging the presumption must show "express contractual language unambiguously delegating the question" to an arbitrator.[36]

In *Chesapeake Appalachia, LLC v. Scout Petroleum*, our Court of Appeals held an agreement expressly requiring the arbitration be conducted in accordance with the "rules of the American Arbitration Act" failed to meet the burden of proving clearly and unmistakably the parties agreed the issue to be delegated to the arbitrators.[37] Our Court of Appeals concluded it enjoyed have jurisdiction to determine whether an agreement is arbitrable if the language is "silent" regarding delegation to the arbitrators.[38] In *Next Financial Group, Inc. v. GMS Mine Repair and Maintenance, Inc.*, the District Court for the Western District of Pennsylvania held the investor's "filings in the FINRA proceeding do not constitute clear and unmistakable evidence [the investor] intended to delegate the question of arbitrability to the FINRA arbitrator."[39]

The Investors' claim is based on the language in the FINRA rules and the Uniform Submission Agreement. Neither includes language "clearly and unmistakably" expressing the parties' intent to have arbitrators instead of the court decide the question of arbitrability. Like the agreement in *Chesapeake Appalachia*, the agreement here does not delegate arbitrability and thus the question of arbitrability is for us. In line with *Next Financial Group*, the Investors' filings in the FINRA proceedings are not sufficiently clear and unmistakable evidence of the Investors' intent to delegate the gateway question of arbitrability to the arbitrator.

The parties did not delegate the question of arbitrability to FINRA. We have jurisdiction to decide the arbitrability of the Investors' claims.

B.     **Investor Cynthia Currie's claims are not arbitrable.**

Investor Cynthia Currie petitions to arbitrate both her securities and insurance policy claims against ONESCO even though she never signed an account agreement with it.  ONESCO argues Ms. Currie never became a customer and it is not required to arbitrate her claims.  As Ms. Currie never opened an ONESCO account, the FINRA Rules and Uniform Submission Agreement do not apply to her and her claims are not arbitrable.

FINRA Rules of arbitration only apply to customers.[40] FINRA Rule 12200 requires parties to arbitrate only under circumstances related to customers of FINRA members.[41]  The United States Court of Appeals for the Second Circuit defines a customer for purposes of FINRA Rule 12200 as one who either (1) purchases a good or service from a FINRA member; or (2) has an account with a FINRA member.[42]  The United States Court of Appeals for the Fourth Circuit defined a customer as one "who purchases commodities or services from a FINRA member in the course of the member's business activities insofar as those activities are regulated by FINRA— namely investment banking and securities business activities."[43]

The Investors' counsel concedes Ms. Currie did not have an account with ONESCO.[44] ONESCO's President swore, "Cynthia Currie was not a customer of ONESCO and ONESCO did not enter into any agreement whatsoever with Cynthia Currie."[45] Ms. Currie did not purchase a good or service from ONESCO and did not open an account with ONESCO.

The FINRA Rules do not require arbitration of claims of a non-customer. Cynthia Currie is not a customer under FINRA Rule 12200.[46]  Ms. Currie's claims are not subject to FINRA arbitration.

C.      **The Investors' insurance claims are not within the scope of arbitrable claims.**

We are now presented with the issue of which of the Investors claims are arbitrable under the parties' agreements. Investors argue the parties agreed to arbitrate all the claims filed in the Statement of Claim. ONESCO argues it only agreed to arbitrate the claims arbitrable under the FINRA Rules, which would exclude the insurance claims. Under either the FINRA Rules or the Uniform Submission Agreement, insurance claims are not within the scope of arbitrable claims.

Before compelling a party to arbitrate, we must find (1) a valid arbitration agreement exists, and (2) the dispute falls within the scope of the arbitration agreement.[47] Our presumption is in favor of arbitrability.[48]

A valid arbitration agreement exists between the Investors and ONESCO but the insurance claims are not within the scope of the arbitration agreement. Insurance claims are not affirmatively included within the scope of the agreement. They are not subject to arbitration. We favor arbitrability for the relevant securities claims but cannot force ONESCO to arbitrate claims they did not agree to.

1.      **There is a valid and enforceable arbitration agreement.**

We must first address whether there is a valid and enforceable arbitration agreement. ONESCO is a registered entity subject to FINRA's Rules. ONESCO signed a Uniform Submission Agreement agreeing to arbitrate, "all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure."[49]

An arbitration agreement is reviewed as a matter of contract law and parties are not required to submit to arbitration a dispute which they did not agree to submit.[50] The ONESCO agreement incorporates FINRA Rules. FINRA Rule 12200 requires parties to arbitrate a dispute if: (1)

7

arbitration under the Code is either required by a written agreement, or requested by the customer; (2) the dispute is between a customer and a member or associated person of a member; and (3) the dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company. [51]

Investors Joseph Cordone, Blythe Stagliano, and Susan Stagliano are customers of ONESCO. They requested arbitration of a dispute arising in connection with ONESCO's business activities through its registered agent Mr. Wesselt. Under Rule 12200, ONESCO is bound to arbitrate. ONESCO signed the Uniform Submission Agreement agreeing to arbitrate according to the FINRA Rules. The Uniform Submission Agreement is a separate valid and enforceable arbitration agreement. [52]

The arbitration agreement is valid and enforceable. The parties have a valid enforceable agreement and satisfy the first inquiry necessary to compel arbitration. We now turn to the scope of the arbitration agreement.

### 2. The insurance claims are not within the scope of the arbitration agreement.

The Investors argue ONESCO agreed to arbitrate all claims in the Statement of the Claim, by signing the Uniform Submission Agreement. The statement of the claim included both securities and insurance claims. ONESCO argues the Investors' insurance claims are not within the scope of their agreement defined by the FINRA Rules. We find ONESCO is compelled to arbitrate only those claims reflected in the agreement to arbitrate and does not include insurance claims.

In last term's decision in *Lamps Plus Inc. v. Varela*, the Supreme Court defined the scope of an arbitration agreement regarding an employer seeking to compel arbitration of an employee

individually rather than on a class wide basis as stated in the arbitration agreement.[53] The Supreme Court emphasized the foundational principal in the Federal Arbitration Act, "arbitration is strictly a matter of consent."[54] Parties may shape their agreement by specifying, "with whom they will arbitrate, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes."[55] Once the parties determine their agreement, the task of the Court is "to give effect to the intent of the parties."[56] The Supreme Court explained, "silence or ambiguity" does not constitute agreement because doing so would force unwilling parties to arbitrate a matter they intended a judge would decide.[57] The Court held the parties did not consent to arbitrate on a class-wide basis and could not force the employees to arbitrate something to which they did not agree.[58]

FINRA Rule 12200 does not require arbitration of "disputes involving the insurance business activities of a member that is also an insurance company."[59] Furthering this principal, Rule 13200 of the FINRA code provides, "disputes arising out of the insurance business activities of a member that is also an insurance company are not required to be arbitrated under the Code."[60] In *re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions,* our Court of Appeals interpreted similar insurance language regarding arbitration agreements in relation to an employment dispute.[61] The Court examined a National Association of Securities Dealers rule[62] which excluded "disputes involving the insurance business of any members of any member which is also an insurance company" and noted in these situations "there is a clear intent not to arbitrate but rather to leave the matter with in the province of the courts."[63] Our Court of Appeals concluded the rule is ambiguous as to employment claims and did not define insurance business.[64] FINRA Rule 13200 contains similar language to the National Association of Securities Dealers rule.[65]

The Investors again analogize to *Safra Securities*, where the court ordered the company to arbitrate claims relating to a bank officer FINRA member.[66] The Investors attempt to compare

9

this enforcement against a company to this case, but this analogy is not applicable. The parties agreed to arbitrate under the FINRA Rules. The issue is not whether they agreed to arbitrate but whether the claims are within the scope of the Rules and the parties' agreement.

ONESCO's agreement bound them to arbitrate under the FINRA Rules. The FINRA Rules exclude the arbitration of insurance claims. The parties consented to arbitrate under the FINRA Rules. When signing the Uniform Submission Agreement, ONESCO reserved the right to challenge the arbitrability of some of the claims in the Investors' Statement of the Claim. Like the limited scope of the agreement in *Lamps Plus*, *Inc.*, the parties here cannot be compelled to arbitrate topics to which they did not consent. ONESCO plainly intended to arbitrate the Investors' securities claims but segregated the non-arbitrable insurance claims.

The insurance claims are not within the scope of the agreement to arbitrate and we cannot compel ONESCO to arbitrate the Investors' insurance claims.

## III. Conclusion

The Investors move to compel ONESCO to arbitrate all of Investors' claims in a FINRA Dispute Resolution forum. ONESCO never agreed to arbitrate insurance claims and the FINRA Rules do not compel it to do so. Cynthia Currie is not an ONESCO customer. We grant summary judgment in favor or ONESCO and deny the Investors' motion to compel arbitration of the insurance claims and Investor Currie's claims.

---

[1] The parties agreed no additional discovery is necessary and Rule 56 should apply. ECF Doc. No. 19. Their agreement is consistent with our understanding of the standard of review. In *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, our Court of Appeals defined how we review a motion to compel arbitration. 716 F.3d 764, 766 (3d Cir. 2013). The motion can be decided under the motion to dismiss standard or under a summary judgment standard of Rule 56. *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 216 (3d Cir. 2019) (updating *Guidotti*, 716 F.3d at 766). If the complaint and its supporting documents are unclear regarding the agreement to arbitrate, then the parties should be entitled to discovery on the question of arbitrability before a court hears the question further. *Id.* at 216 (citing Fed. R. Civ. P. 56(c)(1)(A)). Under Rule 56, we "grant summary

---

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Guidotti*, 716 F.3d at 772 (quoting Fed.R.Civ.P. 56(c)(1)(A) (clarifying the party asserting there is a genuine dispute of material fact must support that assertion by 'citing to particular parts of … the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials'). In evaluating the motion, we "must draw all reasonable inferences in favor of the nonmoving party, and [we] may not make credibility determinations or weigh the evidence." *Id*. at 772.

[2] ECF Doc. No. 5-1, p.8.

[3] *Id.*, p.9.

[4] ECF Doc. No. 5-1, p.7.

[5] ECF Doc. No. 18-1 p. 7.

[6] *Id.,* p. 3.

[7] ECF Doc. No. 18-3.

[8] *Id.*

[9] ECF Doc. No. 5-1 p. 9.

[10] *Id.*

[11] ECF Doc. No. 18-4 p.3.

[12] ECF Doc. No. 18-1 p.7-8.

[13] ECF Doc. No. 5-3 p. 4 (chart detailing numerous complaints from Mr. Wesselt's customers alleging similar complaints to the Plaintiff's regarding Mr. Wesselt's conduct).

[14] ECF Doc. No. 5-10 p.3.

[15] *Id.*

[16] ECF Doc. No. 18 p. 16.

[17] *Id.*

[18] ECF Doc. No. 18 p. 6.

[19] *Id.*

[20] ECF Doc. No. 5-4 p.1.

[21] ECF Doc. No. 18-2 p. 2.

[22] ECF Doc. No. 5-9 p.1.

[23] *Id.*

[24] *Id.*

[25] 9 U.S.C. § 4.

[26] ECF Doc. No. 19.

[27] *Id.*

[28] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).

[29] 9 U.S.C. § 4.

[30] *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019); *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011).

[31] 9 U.S.C. §§ 2,4.

[32] *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018); *See also Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999); *See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985) (holding we should not "distort the process of contract interpretation," when reading an arbitration clause).

[33] *Id.* (explaining if a party has not agreed to arbitrate, the courts have no authority to mandate arbitration).

[34] *Singh*, 939 F.3d at 215.

[35] 761 F.3d 326, 335-36 (3d Cir. 2014); *See also AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 644 (1986) (holding the duty for parties to arbitrate a particular grievance is an issue for determination by the court…unless the parties clearly and unmistakably provide otherwise).

[36] *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761 (3d Cir. 2016).

[37] *Chesapeake Appalachia,* 809 F.3d at 753-54.

[38] *Id.* at 754.

[39] *Next Fin. Grp., Inc. v. GMS Mine Repair & Maint., Inc*, No. 19-168, 2020 WL 924209 at *7 (W.D. Pa. Feb 26, 2020).

[40] FINRA Rule 12200 Arbitration Under an Arbitration Agreement or the Rules of FINRA (amended Dec. 15 2008) https://www.finra.org/rules-guidance/rulebooks/fina-rules/12200.

[41] *Id.*

[42] *Citigroup Glob. Markets, Inc. v. Abbar*, 761 F.3d 268, 276 (2d Cir. 2014); *see also Grant v. Rotolante*, 147 So. 3d 128, 135 (Fla. Dist. Ct. App. 2014) (holding a customer is "one who, while not broker or dealer, either purchases good or service from a FINRA member, or has an account with a FINRA member").

[43] *UBS Fin. Servs., Inc. v. Carilion Clinic,* 706 F.3d 319, 326 (4th Cir. 2013).

[44] ECF Doc. No. 19.

[45] ECF Doc. No. 18-4 p.3.

[46] ECF Doc. No. 18-6 p. 2.

[47] *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009); *see also ACE Am. Ins. Co. v. Guerriero*, 738 F. App'x 72, 77 (3d Cir. 2018).

[48] *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

[49] ECF Doc. No 5-4.

[50] *AT&T Technologies, Inc*, 475 U.S. at 650.

[51] FINRA Rule 12200 Arbitration Under an Arbitration Agreement or the Rules of FINRA (amended Dec. 15 2008) https://www.finra.org/rules-guidance/rulebooks/fina-rules/12200.

[52] Investors analogize to *Safra Sec., LLC v. Gonzales*, to explain the similar language in an agreement "constitutes a clear and unqualified agreement to arbitrate this case." 764 F. App'x 125, 126 (2d Cir. 2019). This comparison is not necessary because the Investors other than Ms. Currie and ONESCO agree they signed an agreement to arbitrate.

[53] *Lamps Plus, Inc*., 139 S. Ct. at 1415.

[54] *Id.*; *see also Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989) (holding the parties defined the scope of the arbitration agreement by their intentions).

[55] *Lamps Plus, Inc*., 139 S. Ct. at 1416; *See also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 682 (2010) (reasoning arbitrators powers come from private parties' decisions to forgo the legal process and submit their disputes to this private form of dispute resolution).

[56] *Id.*

[57] *Lamps Plus, Inc.*, 139 S. Ct. at 1417; *See also Volt Information Sciences, Inc.,* 489 U.S. at 479 (holding arbitration is a matter of consent, not coercion and parties are free to structure their agreements as they see fit).

[58] *Id.*; *AT&T Technologies, Inc.*, 475 U.S. at 650 (explaining an order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute).

[59] FINRA Rule 12200 Arbitration Under an Arbitration Agreement or the Rules of FINRA (amended Dec. 15 2008) https://www.finra.org/rules-guidance/rulebooks/fina-rules/12200.

[60] FINRA Rule 1300 Required Arbitration (amended Dec. 15 2008) https://www.finra.org/rules-guidance/rulebooks/fina-rules/13200 .

[61] *In re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions*, 133 F.3d 225, 231-33 (3d Cir. 1998).

[62] The NASD is the predecessor to FINRA and had a rule in The Industry Code (governing disputes between firms and employees) excluding certain insurance disputes.

[63] *In re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions*, 133 F.3d at 232.

[64] *Id.* at 233 (holding the employment claims could be arbitrated because of the history of the employment rule). The insurance language is similar but not identical to our case. Another difference between the two cases is that unlike Prudential, ONESCO is not in the insurance business at all.

[65] *See also Kilcher v. Dale*, 784 N.W.2d 866, 869-71 (Minn. Ct. App. 2010). *(*explaining "under the FINRA Rules, claims involving insurance are barred from arbitration and it is appropriate to stay resolution of the non-arbitrable claims until the decision of the arbitrable claims).

[66] *Safra Sec., LLC,* 764 F. App'x 125.